NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 1367

KAYLA AUTRY

VERSUS

VICARI ENTERPRISES, LLC D/B/A DQ GRILL & CHILL
RESTAURANT, ADMIRAL INSURANCE COMPANY, AND VIA WILSON
(EMPLOYEE OF DQ GRILL AND CHILL RESTAURANT)

*Judgment Rendered:* __JUN 2 3 2023__

********

Appealed from the 21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Case No. 160107, Division D

The Honorable Brian K. Abels, Judge Presiding

********

Jeffrey N. Rabb                    Counsel for Plaintiff/Appellant
ReAzalia Z. Allen                  Kayla Autry
Baton Rouge, Louisiana


H. Philip Radecker, Jr.            Counsel for Defendant/Appellee
Daniel E. Oser                     Vicari Enterprises, LLC d/b/a DQ Grill
Joseph L. Spilman, III             and Chill Restaurant, Admiral Insurance
New Orleans, Louisiana             Company, and Via Wilson

********

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

Penzato, J., concurs
Welch, J. concurs without reasons

**LANIER, J.**

The plaintiff-appellant, Kayla Autry, appeals the summary judgment of the Twenty-First Judicial District Court in favor of the defendants-appellees, Vicari Enterprises, LLC d/b/a DQ Grill and Chill Restaurant, Admiral Insurance Company, and Via Wilson (collectively "defendants"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Autry alleged that on or about September 4, 2017, she was a patron at the defendants' restaurant located in Denham Springs, Louisiana. She alleged that immediately upon entering the restaurant's restroom, she slipped on water located on the restroom's floor and fell, causing injuries to her person. After falling, Ms. Autry alleged she heard Ms. Wilson, who was employed as a cashier, say she forgot to clean the restroom because she was busy at the cash register. Ms. Autry alleged there were no signs or cones placed in or near the restroom to warn customers of the hazardous condition.

Ms. Autry filed a petition for damages on July 20, 2018. Therein, she claimed the water on the restroom floor created an unsafe, dangerous, and hazardous condition, that the restaurant and Ms. Wilson created and/or had actual notice of the water on the restroom floor, and the defendants failed to warn her of the hazardous condition. She further claimed that the defendants were liable to her for failing to maintain the restaurant in a safe condition, failing to warn her of the hazardous condition, failing to inspect and remove such hazards, and failing to follow their own policies and procedures. Ms. Autry claimed that Ms. Wilson was in the course and scope of her employment with the restaurant, which was vicariously liable for her actions and/or omissions.

2

Ms. Autry also claimed she sustained physical pain and suffering, mental anguish, loss of enjoyment of life, disfigurement and disability, medical expenses, and lost wages. She alleged that Ms. Wilson and the restaurant were insured by a policy issued by Admiral Insurance Company, which would indemnify Ms. Wilson and the restaurant for any damages for which they would be liable to Ms. Autry.

On March 4, 2022, the defendants filed a motion for summary judgment, in which they argued that Ms. Autry could not prove the essential elements of her claim, which were the existence of an unreasonably dangerous condition of which the defendants knew or should have known, and for failing to exercise reasonable care.

The trial court heard the motion for summary judgment on May 31, 2022. In a judgment signed June 14, 2022, the trial court granted the defendants' motion for summary judgment and dismissed Ms. Autry's claims against the defendants with prejudice.[1] On June 24, 2022, Ms. Autry filed a motion for new trial, which was denied by the trial court on October 19, 2022. Ms. Autry now appeals the trial court's June 14, 2022 judgment.

## ASSIGNMENTS OF ERROR

Ms. Autry assigns the following errors to the trial court's judgment:

1. The trial court erred in finding that Ms. Autry presented no evidence of water being on the floor of the restroom for a significant amount of time in which it would have been discovered.

2. The trial court erred in not finding that the puddle of water on the restroom floor was created by the defendants and created an unreasonable risk of harm.

3. The trial court erred in not finding that the defendants created the condition and had actual constructive notice of the condition of the bathroom that created unreasonable risk of harm.

---

[1] The trial court also made rulings on evidentiary issues regarding objections raised by the defendants, but those issues have not been raised in the instant appeal.

3

4. The trial court erred in not finding the defendants exercised reasonable care.

## STANDARD OF REVIEW

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. *Wyrick v. Golden Nugget Lake Charles, LLC*, 2020-0665 (La. App. 1 Cir. 12/30/20), 317 So.3d 708, 712. A motion for summary judgment is properly granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. *Wyrick*, 317 So.3d at 712.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Wyrick*, 317 So.3d at 712. A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F).

On a motion for summary judgment, the burden of proof is on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or

4

that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Wyrick*, 317 So.3d at 713. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Wyrick*, 317 So.3d at 713.

## DISCUSSION

Louisiana Revised Statutes 9:2800.6 provides, in pertinent part:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless

it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

In its oral reasons for judgment, the trial court stated that Ms. Autry failed to prove that the hazardous puddle of water was created by the defendants, and also failed to prove that the defendants had actual or constructive notice of the puddle of water; thus, Ms. Autry failed to prove that the defendants did not exercise reasonable care. When constructive notice is at issue, the claimant must come forward with positive evidence showing that the damage causing condition existed for some period of time, and that such time was sufficient to place the merchant on notice of its existence. *Bryant v. Ray Brandt Dodge, Inc.*, 2019-0464 (La. App. 5 Cir. 3/17/20), 292 So.3d 190, 196-97, citing *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So.2d 1081, 1082.

In support of their motion for summary judgment, the defendants filed the depositions of Ms. Wilson and Adriana Hampton, who were employed by the defendants on September 4, 2017, and were working at the restaurant within the course and scope of their employment at the time of the accident. In her deposition, Ms. Wilson testified that the restaurant did not have a checklist for employees to sign and write the time when they checked and cleaned the restroom. Ms. Wilson also stated that 5:00 to 8:00 in the evening is the restaurant's busiest time for customers, and Ms. Autry arrived at the restaurant approximately at 5:30 p.m. Ms. Wilson stated that she was unable to check on the restroom at that time due to the high volume of customers coming into and leaving the restaurant. During her work shift on the date of the accident, Ms. Wilson never entered the restroom prior to Ms. Autry's accident.

Additionally, Ms. Wilson explained that the restroom floor was cleaned or mopped if a spill was discovered and at closing each night. Otherwise, there was no set time to check the restroom. It was the duty of the cashiers to clean the

6

restroom, and she and Ms. Hampton, and possibly a third, Octavia Felder, were the cashiers on duty at the time of the accident. Ms. Wilson testified that she was probably at the counter when the accident occurred, and was told about it happening by one of the employees. Ms. Wilson also testified that she never spoke to Ms. Autry during the time of the accident, and she denied saying that she forgot to clean the restroom floor because the restaurant was busy.

Ms. Hampton testified in her deposition that the cashiers were responsible for keeping the restrooms clean. She also testified that upon her being hired, she was trained on how to clean the restrooms in the restaurant by another cashier. In that training, Ms. Hampton remembered being told that the restrooms had to be cleaned every hour, although this was not a written rule. Therefore, it was Ms. Hampton's practice to clean the restroom one hour after she clocked in for work. She also stated that there was no checklist in the restroom for employees to sign after they had cleaned it. Although she remembered working with Ms. Wilson, Ms. Hampton could not specify who she worked with on the date of the accident, but she did state that another cashier would have been working with her.

Ms. Hampton testified that she typically started her shift at 4:00 in the afternoon. During the deposition, Ms. Hampton was read a recorded statement she gave on the date of the accident. In that statement, Ms. Hampton said that after clocking in, she had gone into the restroom prior to Ms. Autry's accident. Ms. Hampton stated there was no puddle on the floor of the restroom. Ms. Hampton verified that her recorded statement was accurate.[2] Ms. Hampton did not remember anyone saying that he/she forgot to clean the restroom because the restaurant got busy. Additionally, Ms. Hampton did not speak with Ms. Autry. Ms. Hampton also testified that she did not think the puddle in which Ms. Autry

---

[2] Ms. Hampton's deposition testimony was that she did not remember if she had entered the restroom prior to the accident, but the recorded statement was used to refresh her memory.

slipped was created by the defendants, nor did she believe the defendants knew of the puddle prior to the accident occurring.

In opposition to the defendants' motion for summary judgment, Ms. Autry submitted excerpts of her own deposition, her affidavit, with the defendants' incident report dated September 4, 2017 attached thereto, and the depositions of Ms. Hampton, Ms. Wilson, Ms. Felder, and Cade Hollister.[3] Ms. Autry testified in her deposition that the first and only time she had been to the restaurant's restroom was on September 4, 2017. She testified that upon entering the restroom, she slipped with both of her feet coming out from under her, and struck the floor with her buttocks. She then rolled to her side, crawled back to the door, pulled herself up, and exited the restroom. She also stated that when she heard Ms. Wilson say she had forgotten to clean the restroom, that statement was not made directly to her. According to her affidavit, the incident occurred around 5:30 p.m. on September 4, 2017, and she completed an incident report shortly after it occurred. (

The incident report contained the following pertinent information: the date and time of the injury was September 4, 2017, at 5:30 p.m.; water on the restroom floor is listed as the cause of the injury; Ms. Autry injured both her knees, her right buttock, and left ankle due to her fall; no one saw the injury take place; Ms. Autry

---

[3] Any evidence not objected to in accordance with La. C.C.P. art. 966(D)(2), i.e., by raising an objection "in a timely filed opposition or reply memorandum," must be considered by the trial court. *Mariakis v. North Oaks Health System*, 2018-0165 (La. App. 1 Cir. 9/21/18), 258 So.3d 88, 96. In their timely filed reply memorandum, the defendants objected to the affidavit of Ms. Autry (and attached incident report) and to the excerpts of her deposition. The trial court overruled that objection. Since that evidentiary issue is not before this court, we will review that evidence *de novo*.

Five days prior to the hearing on the defendants' motion, Ms. Autry filed a supplemental opposition to the defendants' motion for summary judgment, in which she attached her complete deposition, as well as the complete depositions of Ms. Felder and Mr. Hollister. At the hearing on their motion, the defendants orally objected to Ms. Autry's supplemental opposition and evidence; the trial court sustained the objection. However, we note that Ms. Autry's supplemental opposition and evidence were not properly before the trial court because she did not file and serve the supplemental opposition and evidence within fifteen days of the hearing on the defendants' motion for summary judgment, as required under La. C.C.P. 966(B)(2). Therefore, because the evidence was not properly filed and served in accordance with La. C.C.P. art. 966(B)(2), we will not review Ms. Autry's supplemental opposition or evidence.

8

did not need immediate medical attention; Ms. Autry notified the employees of the incident; Ms. Autry spoke to the manager on duty; Ms. Autry slipped and fell immediately upon entering the restroom; the report was signed by Ms. Autry, dated September 4, 2017; the names of Cade Hollister and Kimberly McDaniel appear immediately under the signature line for the manager on duty.

The second page of the incident report was ostensibly filled out by the manager on duty, although the signature line remained blank. The additional pertinent information is: the manager asked Ms. Autry if she needed medical attention; there were no witnesses to the incident; the manager obtained statements from the employees; the general manager was called and informed of the incident; a follow up on the incident was made September 5, 2017, in which it was learned that Ms. Autry did seek medical attention; camera footage of the date of the incident was saved.

Octavia Felder was also employed by the defendants and within the course and scope of her employment as a cashier on the date of the incident. She stated that the cashiers were responsible for cleaning the restrooms, but that they received no particular training, and they would take turns checking on the conditions of the restrooms and cleaning them whenever necessary. She also testified that when the restaurant was busy, there was not enough time to clean the restroom. Ms. Felder further stated there was no checklist for the employees to sign and date whenever they cleaned the restroom. She did not recall cleaning the restroom on the date of the incident. Ms. Felder never spoke to Ms. Autry, and did not know who she was nor remembered seeing her. She neither filled out a report nor gave a statement. Ms. Felder did not recall being at the restaurant when the incident occurred, although, according to a payroll report, she did work at the restaurant on that date. Ms. Felder did not recall anyone saying he/she forgot to clean the restroom.

9

Cade Hollister was the manager on duty at the time of the incident, but had also been a cashier at the restaurant prior to that time. He stated that the cashiers were responsible for cleaning the restrooms, although there was no set schedule in doing so. He stated that when he had been a cashier, his habit was to clean the bathroom just before closing. Mr. Hollister stated that when the restaurant was busy during lunchtime and dinnertime, the cashiers are unable to clean the restroom. Mr. Hollister also stated that if issues with the restroom were brought to the cashiers' attention, they would then address them.

In our *de novo* review of the motion, memoranda, and supporting documents, drawing all factual inferences in favor of Ms. Autry, we find that Ms. Autry did in fact slip and fall in the defendants' restroom around 5:30 p.m. on September 4, 2017. Ms. Wilson, Ms. Hampton, and possibly Ms. Felder were the cashiers on duty, and Mr. Hollister was the manager on duty. Neither Ms. Wilson nor Ms. Felder recall cleaning the restroom prior to Ms. Autry's fall, but Ms. Hampton did enter the restroom. She started her shift at around 4:00 p.m., and she testified that at some time between her coming into work and Ms. Autry's fall, she entered the restroom and did not find a puddle of water on the floor. Ms. Autry offered no evidence to refute this testimony.

Even if taken as true that Ms. Wilson stated she had forgotten to clean the restroom, it would not create a material issue of fact since Ms. Hampton stated affirmatively in her recorded statement that she did check the restroom just prior to the accident. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care. *White*, 699 So.2d at 1086. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as

10

mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. *White*, 699 So.2d at 1084-85. This is not an impossible burden. *White*, 699 So.2d at 1085.

In the instant case, Ms. Autry did not present evidence of the length of time the puddle had existed on the restroom floor. However, the defendant presented the testimony of Ms. Hampton, in which she stated she would check the restroom about an hour after she came in to work. By her testimony, Ms. Hampton checked the restroom somewhere between 4:00 p.m. and 5:30 p.m., and she did not see a puddle on the floor. Therefore, the puddle could not have existed for more than half an hour when Ms. Autry slipped in it.

By La. R.S. 9:2800.6(C)(1)'s definition of constructive notice, we find the defendants exercised reasonable care in checking the condition of the restroom, and that the puddle did not exist for such a period of time that the defendants either knew or should have known of the condition. Although there was an employee in the vicinity of the restroom, and although no written cleanup procedure existed, those factors are not sufficient to constitute constructive notice, given that an employee did in fact check the restroom prior to Ms. Autry's fall.

**DECREE**

The summary judgment of the Twenty-First Judicial District Court rendered in favor of the defendants, Vicari Enterprises, LLC d/b/a DQ Grill and Chill Restaurant, Admiral Insurance Company, and Via Wilson, is affirmed. All costs of the instant appeal are assessed to the plaintiff, Kayla Autry.

**AFFIRMED.**